# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| GREAT DIVIDE INSURANCE COMPANY, | )<br>) |
| Plaintiff, | )<br>) 3:15-CV-00189 JWS |
| vs. | )<br>) ORDER AND OPINION |
| | ) [Re: Motion at docket 65] |
| BEAR MOUNTAIN LODGE, LLC;<br>MERRILL M. MCGAHAN; LAURI B.<br>JOHNSON; MERRILL MARIE<br>MCGAHAN, *et al.*, | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## I. MOTION PRESENTED

At docket 65, Defendants Rediske Family Limited Partnership and JB Leasing Company, LLC (collectively Rediske Family Defendants) move for an order staying the declaratory judgment action brought by Plaintiff Great Divide Insurance Company ("Great Divide"). Defendants Bear Mountain Lodge, LLC; Merrill M. McGahan; Lauri B. Johnson; and Merrill Marie McGahan ( collectively "BML") filed a conditional non-opposition at docket 67. Great Divide partially opposes the motion at docket 75. Rediske Family Defendants reply at docket 76. Oral argument was heard on May 9, 2016.

## II. BACKGROUND

On July 7, 2013, Walter Rediske, owner and chief pilot of Rediske Air, LLC ("Rediske Air") was transporting guests in a deHavilland DHC-3 Otter aircraft to the Bear Mountain Lodge when the plane crashed following its takeoff from the Soldotna Airport. Walter Rediske and all of the passengers died in the crash. The survivors and estates of the deceased filed various lawsuits related to the crash. They filed one lawsuit in the District of Alaska against Rediske Air, Rediske Family Defendants, and the estate of Walter Rediske. They filed a separate lawsuit in the District of Alaska against BML and other companies that allegedly modified or provided parts to the aircraft involved in the crash. One of the companies then filed a third-party claim against Rediske Air, Rediske Family Defendants, and the estate of Walter Rediske. In a third and separate lawsuit brought in the District of Alaska, the estate of Walter Rediske sued BML and Rediske Family Defendants. They also filed a parallel lawsuit in state court. The three District of Alaska cases have been consolidated. The parties have not informed the court as to the status of the state court case.

Bear Mountain Lodge, LLC is named as the insured on a Great Divide insurance policy that was in effect at the time of the crash. Defendants Merrill M. McGahan, Lauri B. Johnson, and Merrill Marie McGahan are the owners of Bear Mountain Lodge, LLC, and, as such, are potential additional insureds under the policy. BML, through its attorney, reported the litigation to Great Divide. Great Divide sent BML's attorney a reservation-of-rights letter. The letter explained Great Divide's position that provisions in BML's insurance policy may exclude coverage for the claims arising from the airplane crash. In addition, the letter explained that Great Divide would pay the attorneys' fees and costs BML incurred in the defense of those claims as to which Great Divide had reserved its rights. Two months later, Great Divide filed a complaint for declaratory judgment, asking that the court determine its obligations under BML's insurance policy. Specifically, Great Divide contends that there are three exclusions in the policy that disclaim coverage for the accident: 1) the "Aircraft Exclusion"; 2) the "Designated

Operations Exclusion"; and 3) the "Contractors Exclusion."  BML filed a motion for summary judgment, asking the court to find the three exclusions inapplicable and hold Great Divide liable for coverage under the policy.  While the motion for summary judgment was pending, Rediske Family Defendants moved to stay the declaratory judgment action.  BML does not oppose a stay, provided Great Divide continues to provide a defense under a reservation of rights.  Great Divide has acquiesced in the request to stay proceedings concerning the Aircraft Exclusion and the Designated Operations Exclusion, but contends that the court should not stay proceedings relating to the Contractors Exclusion.

### III.  STANDARD OF REVIEW

The Declaratory Judgment Act requires that a declaratory judgment action present an actual case or controversy under Article III of the Constitution and be consistent with statutes governing the jurisdiction of federal courts.[1]  "If the suit passes constitutional and statutory muster, the district court must also be satisfied that entertaining the action is appropriate."[2]  Such a determination is discretionary and based on prudential considerations.  The prudential considerations are as follows:

    (1) Avoiding the needless determination of state law issues;

    (2) Discouraging the filing of declaratory actions as a means of forum shopping;

    (3) Avoiding duplicative litigation;

    (4) Resolving all aspects of the controversy in a single proceeding if possible;

    (5) Avoiding intervention unless the declaratory action will serve a useful purpose in clarifying the legal relations at issue;

    (6) Avoiding procedural fencing or permitting one party to obtain an unjust res judicata advantage at the expense of the other;

    (7) Avoiding entanglement between the federal and state court systems; and

---

[1] *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1222-23 (9th Cir. 1998).

[2] *Id.* at 1223.

(8) Avoiding jeopardizing the convenience of the parties.[3]

## IV.  DISCUSSION

The parties agree that only some of the eight factors mentioned above are relevant to the court's decision here.  Each side argues that factors 3 (duplicative litigation), 4 (single proceeding), and 6 (res judicata) are relevant and favor its position.  In addition, Great Divide asserts that factor 5 weighs against a stay because the court's decision on the Contractors Exclusion could resolve the coverage issue and thus clarify the legal relations in the underlying litigation between Great Divide and BML.

**A. Duplicative Litigation/Multiple Proceedings**

Rediske Family Defendants argue that a stay is warranted because the factual overlap between the underlying tort litigation and the coverage litigation will result in duplicative and costly efforts.   The fact that there is an underlying tort case that involves the same fact pattern as the insurer's declaratory judgment action, and therefore has the potential for duplicative discovery, does not automatically bar declaratory relief.[4]  This principle holds true even if the resolution of the coverage dispute and the underlying tort dispute turns on a common factual inquiry, as long as the actual questions to be determined remain distinct between the coverage action and the tort action.[5]  For example, *Provident Tradesmens Bank & Trust Co. v. Patterson*[6] was a declaratory judgment action to determine insurance coverage.  In that case, an insured car owner had loaned his car to another driver who proceeded to collide the loaned car into a truck.  The owner of the car was sued for the damages resulting from the accident.  The Supreme Court explained that both the coverage action and the tort

---

[3]*Nat'l Chiropractic Mut. Ins. Co. v. Doe*, 23 F. Supp. 2d 1109, 1115 (D. Alaska 1998).

[4]*Cont'l Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737-38 (2d Cir. 1992);

[5]*Id.*; *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 127-28 (1968).

[6]390 U.S. 102 (1968).

-4-

action would necessarily address what the owner said to the driver when he gave him the keys, but that the tort suit turned on whether the conversation made the driver an agent of the owner while the coverage action concerned only whether the driver had permission to use the car.[7] Consequently, the Court held that the district court properly exercised jurisdiction over the declaratory judgment action.[8]

Another example is found in *Standard Fire Insurance Co. v. Gordon*.[9] The tort action involved a renter who sued an insured property owner for negligent maintenance after falling down stairs at the rental premises. The insurer filed a declaratory judgment action to disclaim coverage. The court retained jurisdiction over the declaratory judgment action despite the fact that both cases involved facts related to the insured's interactions with the rented premises. It held that the tort suit turned on the insured's maintenance of the premises while the coverage action turned on whether the insured intended to sell, reside at, or rent the premises. The renter and owner argued that whether the owner failed to make repairs to the premises could impact the court's analysis as to whether the owner intended to reside at the premises. The court, however, disagreed, noting that "[b]ecause it is unclear what impact, if any, [the owner's] failure to make repairs may have on [the court's] determination of coverage, [it] is not the sort of common factual question justifying dismissal."[10]

Both the underlying tort action and the Contractors Exclusion at issue in this declaratory judgment action implicate questions related to a common point of fact: the relationship between BML and Rediske Air. However, like the cases discussed above, the legal and factual questions to be determined in each action are sufficiently distinct. The issue in the underlying litigation turns on the amount of control BML had over

---

[7]*Id.* at 127.

[8]*Id.* at 127-28.

[9]376 F. Supp. 2d 218 (D.R.I. 2008).

[10]*Id.* at 229.

Rediske Air and the flight, while the factual issue that would be resolved in relation to the Contractors Exclusion, assuming the court rejects BML's limited definition of the term "contractor," is whether there was indeed a contract between the two parties.[11]

This case is unlike *National Chiropractic Mutual Insurance Co. v. Doe*[12] relied on by Rediske Family Defendants. "In that case, the insured's liability to his patient for sexual assault or negligent treatment and the insured's right to coverage in view of [his insurance] policy's intentional acts exclusion both turned on whether a sexual assault had occurred."[13] Here, in contrast, BML's liability in the tort action and its right to coverage in light of the Contractors Exclusion do not turn on the exact same issue. While the contract issue here might be relevant to the underlying tort litigation, it does not answer the ultimate question of liability. Put another way, the court agrees with Great Divide that the analysis of whether there was a contract between BML and Rediske Air turns on straightforward principles of contract law that do not implicate the agency issues upon which BML's liability, if any, to the tort plaintiffs would turn.

Rediske Family Defendants concede that the issue of control is legally distinct from the contract issue, but stress that the answer to each issue will require so much factual overlap that a stay is required to avoid costly duplicative discovery efforts. It is unclear at this juncture whether discovery will even be required in the event the court denies BML's motion for summary judgment on the issue of coverage under the Contractors Exclusion. Great Divide contends that the court will be able to determine whether the exclusion applies based on the limited set of undisputed facts already presented to the court because the factual inquiry simply turns on whether there was an

---

[11]Under Alaska law, contract formation requires an offer with essential terms, unequivocal acceptance, consideration, and an intent to be bound. *Davis v. Dykman*, 938 P.2d 1002, 1006 (Alaska 1997).

[12]23 F. Supp. 2d 1109 (D. Alaska 1998).

[13]Doc. 75 at p. 16.

offer, acceptance, and consideration.[14]  Based on the pending summary judgment motion brought by BML, which Rediske Family Defendants did not join or respond to, it indeed appears likely that the court will be able to determine whether the Contractors Exclusion applies based on a limited set of undisputed facts in the record.  This supports the conclusion that there will be no substantial duplication of or interference with ongoing discovery in the underlying litigation.  Even if there are disputed material facts at issue that require further discovery, the court is persuaded by Great Divide's argument that resolution of the contract question is limited in factual scope.  The court will not need to resolve specific terms of the contract, such as how much control over the flight, if any, BML retained.

**B. Collateral Estoppel**

Rediske Family argues that the factual overlap between the tort litigation and the coverage litigation is not only unnecessarily duplicative, but it also raises collateral estoppel issues.  They argue that any legal or factual finding the court makes in relation to this coverage action will preclude them from disputing that finding later in the tort litigation.  Specifically, they point out that in the underlying tort litigation, BML maintains that it did not contract with Rediske Air but instead merely purchased tickets on the passengers' behalf.  Rediske Family Defendants assert that because of this factual overlap, if the court concludes there was a contract, they or BML could then be estopped from maintaining such a position in the tort action.  This argument, however, conflates the issue of control with the issue of a contract. Finding that BML had a contract with Rediske Air does not determine what type of contract it was, nor does it determine the amount of control it had over Rediske Air.  That is, such a finding by the court would not determine whether Rediske Air could be considered an employee of

---

[14]The court notes that Great Divide merely opposed BML's request for summary judgment and did not file a cross motion.  In the event the court were to deny BML's motion for summary judgment, Great Divide should move for summary judgment in its favor.  If Great Divide does not move for summary judgment, the court may need to reconsider the stay issue.

BML, which would make BML responsible for Rediske Air's actions, or an independent contractor, which would place liability on BML only if it retained a certain amount of control over the work Rediske Air performed.[15]  BML argues that a finding that a contract existed between it and Rediske Air would at least insinuate a level of control. While the existence of a contract might be relevant to the issue of control, it is not determinative.  That is, establishing the existence of a contract for services does not resolve the issue of BML's liability, and, therefore, in the event the court were to conclude that BML did in fact contract with Rediske Air, such a conclusion would not preclude BML from asserting that it had no control over the services performed by Rediske Air in the underlying tort litigation.

Given this court's view that there will be little or no duplication of efforts and given that BML's liability in the tort action and its right to coverage in light of the Contractors Exclusion turn on distinct issues, the court concludes that proceeding to determine the application of that particular exclusion is warranted.  Doing so could clarify the legal relationship between Great Divide and BML and influence how the parties proceed in the underlying tort litigation.  However, the court reserves the ability to revisit the issue of a stay if, in the course of resolving a motion for summary judgment, it becomes aware of disputed facts or other factors that strongly weigh in favor of a stay.

### V.  CONCLUSION

Based on the preceding discussion, Rediske Family Defendants' motion to stay is GRANTED IN PART AND DENIED IN PART.  The court will stay its determination as to whether the Aircraft Exclusion and the Designated Operations Exclusion in BML's

---

[15]*Hammond v. Bechtel Inc.*, 606 P.2d 1269, 1273-74 (Alaska 1980); *Anderson v. PPCT Mgmt. Sys., Inc.*, 145 P.3d 503, 510-11 (Alaska 2006).

insurance policy apply so as to preclude coverage in the underlying tort litigation, but the court will determine whether the Contractors Exclusion applies.

DATED this 12th day of May 2016.

/s/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE