# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| GREAT DIVIDE INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )  3:15-CV-00189 JWS |
| vs. | )  ORDER AND OPINION<br>)  [Re: Motion at docket 7] |
| BEAR MOUNTAIN LODGE, LLC; MERRILL M. MCGAHAN; LAURI B. JOHNSON; MERRILL MARIE MCGAHAN, *et al.*, | )<br>)<br>)<br>) |
| Defendants. | ) |

## I. MOTION PRESENTED

At docket 7, Defendants Bear Mountain Lodge, LLC, Merrill M. McGahan, Lauri B. Johnson, and Merrill Marie McGahan ( collectively "BML") filed a motion for summary judgment as to the declaratory judgment action brought by Plaintiff Great Divide Insurance Company ("Great Divide"). Great Divide opposes the motion at docket 56. BML replies at docket 61. Oral argument was requested, but was denied for the reasons given in the order at docket 84.

## II. BACKGROUND

On July 7, 2013, Walter Rediske, owner and chief pilot of Rediske Air, LLC ("Rediske Air") was transporting guests in a deHavilland DHC-3 Otter aircraft to the Bear Mountain Lodge when the plane crashed following its takeoff from the Soldotna Airport. Walter Rediske and all of the passengers died in the crash. The survivors and estates of the deceased filed various lawsuits related to the crash. They filed one lawsuit in the District of Alaska against Rediske Air, Rediske Family Defendants, and the estate of Walter Rediske. They filed a separate lawsuit in the District of Alaska against BML and other companies that allegedly modified or provided parts to the aircraft involved in the crash. One of the companies then filed a third-party claim against Rediske Air, Rediske Family Defendants, and the estate of Walter Rediske. In a third and separate lawsuit brought in the District of Alaska, the estate of Walter Rediske sued BML and Rediske Family Defendants. They also filed a parallel lawsuit in state court. The three District of Alaska cases have been consolidated.

Bear Mountain Lodge, LLC is named as the insured on a Great Divide insurance policy that was in effect at the time of the crash. Defendants Merrill M. McGahan, Lauri B. Johnson, and Merrill Marie McGahan are the owners of Bear Mountain Lodge, LLC, and, as such, are potential additional insureds under the policy. BML, through its attorney, reported the litigation to Great Divide. Great Divide sent BML's attorney a reservation-of-rights letter. The letter explained Great Divide's position that provisions in BML's insurance policy may exclude coverage for the claims arising from the airplane crash. In addition, the letter explained that Great Divide would pay the attorney's fees and costs BML incurred in the defense of those claims as to which Great Divide had reserved its rights. Two months later, Great Divide filed a complaint for declaratory judgment, asking that the court determine its obligations under BML's insurance policy. Specifically, Great Divide contends that there are three exclusions in the policy that disclaim coverage for the accident: 1) the "Aircraft Exclusion"; 2) the "Designated Operations Exclusion"; and 3) the "Contractors Exclusion."

1    BML filed a motion for summary judgment, asking the court to find the three
exclusions inapplicable and dismiss the declaratory judgment action.  Meanwhile,
Rediske Air filed a motion requesting that the court stay the declaratory judgment action
pending the resolution of the underlying tort cases.  The court granted the motion to
stay in part; it stayed its determination as to whether the Aircraft Exclusion and the
Designated Operations Exclusion in BML's insurance policy apply so as to preclude
coverage in the underlying litigation, but would not stay its determination as to whether
the Contractors Exclusion applies.  Therefore, the court will only rule on BML's
summary judgment motion as to the applicability of the Contractors Exclusion.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1]  The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[2]  Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]  However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[4]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[5]  Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that

---

[1] Fed. R. Civ. P. 56(a).

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[3] *Id.*

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[5] *Id.* at 323.

summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[6] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[7] All evidence presented by the non-movant must be believed for purposes of summary judgment and all justifiable inferences must be drawn in favor of the non-movant.[8] However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[9]

## IV. DISCUSSION

In its motion for summary judgment, BML argues that the Contractors Exclusion does not apply to preclude coverage. The provision reads as follows:

> This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of work performed by any contractor or subcontractor whether hired by or on behalf of any insured, or any acts or omissions in connection with the general supervision of such work.[10]

BML's primary argument in support of its position is that the term "contractor" in the exclusion is limited to mean only a contractor in the construction industry. It argues that the exclusion "is designed to deal with a situation where an insured retains the services of a contractor to perform construction-type work."[11] Great Divide asserts that BML's

---

[6]*Id.* at 323-25.

[7]*Anderson,* 477 U.S. at 248-49.

[8]*Id.* at 255.

[9]*Id.* at 248-49.

[10]Doc. 7-4 at p. 41.

[11]Doc. 8 at p. 25.

interpretation of the term "contractor" is too narrow and "does not comport with the objectively reasonable expectations of the average insured."[12]

When interpreting the insurance policy, the court must apply Alaska substantive law.[13] The Alaska Supreme Court has explained that insurance policies are considered contracts of adhesion, and, as such, their interpretation is controlled by different standards than typical contracts.[14] Rather than simply trying to ascertain the reasonable expectations of the parties, the court must construe an insurance policy "to provide the coverage which a layperson would have reasonably expected, given a lay interpretation of the policy language."[15] Under this approach, policy language is construed in accordance with ordinary and customary usage.[16] "It is not required that ambiguities be found in the policy language as a condition precedent for such construction."[17] That is, "even unambiguous language in an insurance contract will be interpreted to comport with the reasonable expectations of a layperson."[18] If ambiguities do exist in the language, then they are resolved in favor of the insured.[19] To determine reasonable coverage expectations, the court must look to the language of the disputed provision, the language of the other provisions in the policy, relevant

---

[12]Doc. 56 at p. 17.

[13]*Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003) ("[F]ederal courts sitting in diversity apply state substantive law and federal procedural law.").

[14]*Stordahl v. Gov't Emps. Ins. Co.*, 564 P.2d 63, 65 (Alaska 1977); *C.P. ex rel. M.L. v. Allstate Ins. Co.*, 996 P.2d 1216, 1222 (Alaska 2000).

[15]*Stordahl*, 564 P.2d at 65-66.

[16]*State Farm Mut. Auto. Ins. Co. v. Dowdy*, 192 P.3d 994, 998 (Alaska 2008).

[17]*Stordahl,* 564 P.2d at 66; *see also Farquhar v. Alaska Nat'l Ins. Co.*, 20 P.3d 577, 579 (Alaska 2000) (stating that the "flexible approach [to insurance policy interpretation] is appropriate regardless of whether the policy language is ambiguous").

[18]*Allstate Ins. Co. v. Teel*, 100 P.3d 2, 6 (Alaska 2004).

[19]*Fejes v. Alaska Ins. Co., Inc.*, 984 P.2d 519, 522 (Alaska 1999).

extrinsic evidence, and case law interpreting similar provisions.[20] However, even with this "layperson" approach, the court may not simply ignore or rewrite provisions in an insurance contract.[21]

The common definition of the term "contractor" is "one that contracts or is party to a contract."[22] More specifically, the common definition includes "one that contracts to perform work or provide supplies," as well as "one that contracts to erect buildings."[23] Black's Law Dictionary defines "contractor" as "[a] party to a contract" and specifies that it includes "one who contracts to do work for or supply goods to another; . . . a person or company that agrees to do work or provide goods for another company."[24] Therefore, based on these definitions, the term ordinarily includes any person or company that is a party to a contract and usually involves a contract regarding services or supplies. While the term includes and is frequently used to refer to those who provide services related to building, it cannot be said that the common, layperson usage of the term is limited only to construction contractors. There is no other language in BML's policy to suggest as much. Indeed, as noted by Great Divide in its response brief, commercial general liability insurance is "designed to protect the insured from losses arising out of [its] business operations." Excluding the operations of a business retained through a contract to provide goods and services is congruent with the purpose of the policy. BML fails to point to any extrinsic evidence in support of its position that the exclusion should only apply to any third-party doing construction work for it.

---

[20] *Stordahl*, 564 P.2d at 66; *Holderness v. State Farm Fire & Cas. Co.*, 24 P.3d 1235, 1238 (Alaska 2001).

[21] *Stordahl*, 564 P.2d at 65; *Farquhar*, 20 P.3d at 579.

[22] *Merriam-Webster*, www.merriam-webster.com/dictionary/contracto (last visited June 20, 2016).

[23] *Id.*

[24] *Black's Law Dictionary* (10th ed. 2014).

Moreover, case law does not lend support to BML's argument and, in fact, suggests that the common usage of the term "contractor" is simply one who contracts to provide goods or services to another. BML relies primarily on a Texas case, *Nautilus Insurance Co v. ACM Contractors, Inc*.[25] The case involved the application of a contractor-subcontractor exclusion like the one here. The insured in that case was a construction company, ACM, who was building a bridge pursuant to a contract with a county government. It arranged for a third-party, Original Concrete, to deliver and pour concrete. While pouring the concrete, an accident occurred that caused the death of one person and serious injury to another person. The insurance company brought a declaratory judgment action to disclaim coverage for the accident, arguing that a contractors exclusion in the insurance policy applied because the accident resulted from the work of a subcontractor, Original Concrete. One of the defendants, a secondary insurance company which wanted the plaintiff insurance company to continue to provide the defense for ACM, argued that Original Concrete was not a subcontractor within the meaning of the policy because it was not specifically alleged to have been one and did not have a written contract with ACM. The defendant argued that the term "contractor" was ambiguous and therefore the exclusion should be interpreted in its favor to apply only to work done by those parties specifically defined as "contractors" by written agreement and not by parties informally engaged to perform services. The court declined to interpret the exclusion that way, instead finding that because Original Concrete was providing material and services to a general contractor, it must have been a subcontractor. The court did not make a finding on whether the exclusion applied only to the construction industry.

BML stresses the court in *Nautilus* stated that the term "contractor" is a commonly used term "with a generally accepted meaning, particularly in describing

---

[25] 549 F. Supp. 2d 857 (S.D. Tex. 2008).

parties involved in construction projects and/or contracts."[26] The court, however, then went on to provide the dictionary definitions of "contractor" and noted that the term is defined as "one of the parties to a contract" or "a person who contracts to supply certain materials or do certain work for a stipulated sum."[27] It then went on to hold that because Original Concrete was providing materials and services to a general contractor, it was necessarily a subcontractor. Because the case happened to involve the construction industry and a construction project, the court did not need to decide whether the term was specific to only the construction industry. The court also quoted another Texas case which stated that the term subcontractor was not ambiguous and had only one ordinary meaning— "'an individual or business firm contracting to perform part or all of another's contract.'"[28]

In its reply, BML cites an Alaska case, *Everette v. Alyeska Pipeline Service Co.*,[29] and states that "the court [in *Everette*] construed the term "contractor" to include the construction of the pipeline."[30] That is not an accurate assessment of the court's holding. The court was considering the relationship of the parties for purposes of applying workers' compensation laws. It did not hold that one must be in the construction industry to be considered a contractor. Moreover, the Alaska Supreme Court in Everette recognized that in another Alaska case, *Thorsheim v. State*,[31] it had "defined the term 'contractor' as 'a person who undertakes, by contract, the

---

[26] 549 F. Supp. 2d at 866.

[27] *Id.*

[28] *Id.* at 866-87 (quoting *Crow-Williams v. Fed. Pac. Elec. Co.*, 683 S.W.2d 523, 525 (Tex. Civ. App. 1984).

[29] 614 P.2d 1341 (Alaska 1980).

[30] Doc. 61 at p. 19.

[31] 469 P.2d 383 (Alaska 1970).

performance of certain work for another, including the furnishing of goods and services'" for purposes of Alaska's workers' compensation statute.[32]

BML cites to other cases where a contractor exclusion applied in a construction-industry situation. Again, while the cases suggest that the issue often comes up in a construction-related context, it does not suggest that the ordinary meaning is limited to just the construction industry. As noted by Great Divide, the term "contractor" is used in other cases to denote an entity doing work under a contract and encompasses a broad range of industries and operations.[33]

BML also cites to a definition of the term "contractor" found in Title 8 (Business and Professions), Chapter 18 (Construction Contractors and Home Inspectors) of the Alaska Statutes. "As suggested by the title and chapter descriptions, this definition is uniquely tailored to laws governing the construction industry."[34] It does not provide the ordinary meaning of the word "contractor" for purposes of interpreting BML's insurance policy. The court therefore concludes that the term "contractor" in the Contractors Exclusion provision cannot reasonably be understood as referring only to those contractors who perform construction-type work.

BML alternatively argues that summary judgment in its favor is appropriate because the Contractors Exclusion only applies if the contractor was "hired" by the insured and because it did not hire Rediske Air within the plain meaning of that term the exclusion does not apply. As noted by BML in its motion, "[t]he term 'hired' is generally understood to mean that a person is paying for labor or personal services." BML argues that it only purchased the airplane tickets from Rediske Air on behalf of the decedent passengers and therefore did not actually hire Rediske Air. BML, however, has not met its burden of showing that there is no genuine dispute as to any material

---

[32] 614 P.2d at 1345 (quoting *Thorsheim v. State*, 469 P.2d 383, 389 (1970)).

[33] Doc. 56 at pp. 19-20.

[34] Doc. 56 at p. 18.

fact regarding whether BML was simply a middleman or whether it engaged Rediske Air's services in some capacity. Indeed, discovery had not yet taken place at the time BML filed its motion, and there is little evidentiary support in the record.

In its reply, BML argues that the complaints in the underlying tort litigation allege that the damages suffered were in part based on BML's *own* negligent conduct and its *own* work related to the airplane transportation, separate from work performed by Rediske Air, and therefore the claims do not fall within the language of the Contractor's Exclusion. It asks the court to rule that Great Divide's duty to defend remains "untouched and unquestionable."[35] However, BML raised this issue for the first time in its reply brief, providing no opportunity for Great Divide to address this argument. The court will not consider this as a basis for summary judgment.[36] Moreover, BML ignores the language of the Contractors Exclusion that excludes injury and damage "arising out of . . . acts or omissions in connection with the general supervision of [the contractor's or subcontractor's work]." It fails to provide any argument as to why allegations against BML that describe negligent hiring, negligent training and regulation, negligent oversight, and failure to properly provide weight or load the plane do not constitute acts or omissions in connection with the general supervision of the contractor's work. Therefore, the court declines to find that the allegations regarding BML's own negligent conduct precludes the application of the Contractor's Exclusion.

---

[35] Doc. 61 at p. 19.

[36] *See, e.g., State of Nev. v. Watkins*, 914 F.2d 1545, 1560 (9th Cir.1990) ("[Parties] cannot raise a new issue for the first time in their reply briefs." (citations omitted)); *United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal.2000) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers.").

-10-

## V.  CONCLUSION

Based on the preceding discussion, BML's motion for summary judgment at docket 7 is DENIED.

DATED this 24th day of June 2016.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT